**Opinion issued February 12, 2015**



In The

# Court of Appeals

For The

# First District of Texas

————————————

## NO. 01-13-00838-CR

————————————

**FINLEY WRIGHT, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

---

**On Appeal from the 174th District Court**
**Harris County, Texas**
**Trial Court Case No. 1334182**

---

## MEMORANDUM OPINION

Appellant, Finley Wright, was charged by indictment with aggravated sexual

assault.[1]  Appellant pleaded not guilty.  The jury found him guilty and assessed

---

[1]     *See* TEX. PENAL CODE ANN. § 22.021(a)(1)(A)(i), (2)(A)(ii) (Vernon Supp. 2014).

punishment at 40 years' confinement. In three issues, Appellant argues the trial court abused its discretion by allowing bolstering evidence to be admitted.

We affirm.

## Background

J. Watson is a school teacher for the Houston Independent School District. In January 2012, Watson's friend and fellow school teacher, N. Tutt, convinced Watson to go to a club with her. At the club, Appellant approached Watson and asked her to dance. They danced and ultimately kissed some. When the club closed, Appellant told Watson that the person who drove him to the club had left. Watson agreed to give Appellant a ride home.

After directing Watson along a rambling route, Appellant finally told Watson to park behind a dark house. Appellant asked for a goodnight kiss. Watson got out of the car and went to the passenger-side door. They kissed. Then, Appellant pushed Watson down on the front passenger seat. Appellant held her down by her neck and said, "You know you want me to fuck you." Watson said, "No." Appellant started punching Watson in the face. Watson fought back. During the fight, Watson grabbed some scissors and attempted to stab Appellant with them. Appellant wrestled the scissors from Watson. He picked up a pen and began stabbing Watson repeatedly in the abdomen and on one arm.

Because she was unable to fight off Appellant and because Appellant's attacks were escalating in intensity, Watson decided the safest thing to do would be to stop resisting. Appellant then forcibly sexually assaulted her. After that, Appellant closed the passenger door, got Watson's keys, and drove the two of them to a different location. During the course of the night, Appellant drove Watson to various locations and continued to sexually assault her.

Eventually, Appellant drove to an apartment complex with a guard stationed at the front. Appellant drove to the back of the complex and parked. He instructed Watson to get out, and they walked to a certain apartment. Appellant knocked, but no one answered. They returned to Watson's car. Once they were back in the car, Appellant passed out.

After Appellant passed out, Watson got out of the car and went to the guard station. She called 911 while going to the station and reported the rape. Officer S. Stewart arrived on the scene and found Appellant passed out in Watson's car. Officer Stewart arrested Appellant. He also obtained a statement from Watson about what happened to her.

Watson was taken to a hospital. At the hospital, Watson met with D. Oldham, a forensic nurse examiner. Watson described in more detail what had happened to her. Oldham prepared a sexual assault examination forensic report, indicating the extent of Watson's injuries. She also took photographs of the

3

injuries. The sexual assault examination forensic report and the photographs of Watson showed injuries to her face, neck, one shoulder, arms, abdomen, vagina, and one leg.

Some time later, Watson met with Investigator P. Moreno, who is an investigator for the Houston Police Department sex crimes unit. During the meeting, Watson again described what happened to her during the incident.

At trial, the following exchange occurred while the prosecutor was questioning Investigator Moreno:

Q.  After you spoke with Ms. Watson, did you go back through the reports and review what she had told the other officers?

A.  Yes.

Q.  Did you find her accounts to be consistent?

[Defense]: Objection, Your Honor. Improper bolstering.

THE COURT: Overruled.

A.  Yes.

Q.  (BY [Prosecution]) And have you—in investigating cases like this, have you ever come across a time where you believed that a person was making an allegation up?

[Defense]: Objection, Your Honor. Relevance, as well as speculation.

THE COURT: Sustained.

. . . .

Q.  And if the case has already been filed and you find out that that person is not—you don't believe that it's true, would you do

everything in your power to keep the charge from going forward?

[Defense]: Objection, Your Honor. Improper bolstering, as well as speculation.

[Prosecution]: Judge, she's brought it up in her cross-examination.

THE COURT: It's overruled.

Q.    (BY [Prosecution]) If you were to come across a case and you didn't believe that it happened, would you do everything in your power to make sure that the case was either dismissed, or withdrawn, or whatever the case might be?

A.    Yes.

Q.    Have you done that before?

A.    Yes.

Q.    Under what circumstances did that kind of thing come up?

[Defense]: Objection, Your Honor. We are going outside of the scope of this case. It's collateral and it has the possibility of bringing about confusion.

THE COURT: Overruled.

Q.    (BY [Prosecution]) Under what circumstances have you seen that kind of case where you've got somebody making up an allegation like this?

A.    I've seen where the alleged victim of sexual assault is having an affair and comes home late and the husband is upset and so she makes the allegation. I've seen it sometimes involving custody, divorces and stuff.

Q.    But if you have a single woman with no apparent reason to lie and a consistent statement—

[Defense]: Objection, Your Honor, to the form of this question, as well as the improper bolstering of the witness who has not testified yet.

THE COURT: I haven't heard the question yet so that's overruled for now.

Q. (BY [Prosecution]) Would that be a common scenario where you might see this type of allegation being made up?

A. Can you repeat your question.

Q. A single woman who doesn't have any apparent reason to make up a story and is consistent through her statement—

[Defense]: Your honor—

Q. (BY [Prosecution]) —would that be a situation where you might—where you would expect to see someone making that sort of thing up?

A. No.

[Defense]: Your Honor, I renew my objection for the same reasons, as well as there are facts that are not in evidence. There's been no testimony by anyone that has taken the stand that the witness is a single woman or that she has no reason to make things up.

THE COURT: It's overruled.

Q. (BY [Prosecution]) You may answer, sir.

A. No, there isn't.

## Bolstering

In three issues, Appellant argues the trial court abused its discretion by allowing bolstering evidence to be admitted.

## A. Standard of Review

We review a trial court's admission or exclusion of evidence for an abuse of discretion. *Osbourn v. State*, 92 S.W.3d 531, 537 (Tex. Crim. App. 2002). In determining whether the trial court abused its discretion, we consider whether the court acted without reference to guiding rules and principles—that is, whether the court acted arbitrarily or unreasonably. *Lyles v. State*, 850 S.W.2d 497, 502 (Tex. Crim. App. 1993). We must uphold the trial court's ruling so long as it is "within the zone of reasonable disagreement." *Wheeler v. State*, 67 S.W.3d 879, 888 (Tex. Crim. App. 2002).

"Generally, the erroneous admission or exclusion of evidence is nonconstitutional error governed by Rule of Appellate Procedure 44.2(b) if the trial court's ruling merely offends the rules of evidence." *Melgar v. State*, 236 S.W.3d 302, 308 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd); *see also Torres v. State*, 424 S.W.3d 245, 260 (Tex. App.—Houston [14th Dist.] 2014, pet. ref'd) (reviewing claim of bolstering as harmless error). We must disregard non-constitutional error unless it affects an appellant's substantial rights. TEX. R. APP. P. 44.2(b); *Robinson v. State*, 236 S.W.3d 260, 269 (Tex. App.—Houston [1st Dist.] 2007, pet. ref'd). An error affects a substantial right only when the error had a substantial and injurious effect or influence on the jury's verdict. *Robinson*, 236 S.W.3d at 269 (citing *King v. State*, 953 S.W.2d 266, 271 (Tex. Crim. App. 1997)).

We cannot reverse a criminal conviction unless we have "'a grave doubt' that the result was free from the substantial influence of the error . . . . 'Grave doubt' means that 'in the judge's mind, the matter is so evenly balanced that he feels himself in virtual equipoise as to the harmlessness of the error.'" *Burnett v. State*, 88 S.W.3d 633, 637–38 (Tex. Crim. App. 2002) (quoting *O'Neal v. McAninch*, 513 U.S. 432, 435, 115 S. Ct. 992, 994 (1995)).

## B.    Analysis

The State argues that Appellant has not fully preserved his complaint about bolstering and that the trial court did not abuse its discretion by permitting the evidence. We hold that, assuming the complaint was fully preserved and the trial court's ruling was in error, any error is harmless.

Much of the State's case rested on Watson's credibility. Appellant acknowledged that he had sex with Watson. He claimed, however, that the sex was consensual. Watson was the only witness to testify about whether she consented to the sex. Accordingly, her credibility was a central issue for the jury to consider. Because of the importance of Watson's credibility, improper bolstering could potentially have a negative impact on the jury's deliberations. But due to the weight of other evidence supporting Watson's version of events and her credibility, we conclude that any improper bolstering would have had little cumulative effect on the jury's determination.

Appellant told Officer Stewart, Oldham, and Investigator Moreno what had happened to her between when she and Appellant left the club and when she reached the apartment guard station. While some small variations did exist in the versions, they were all largely the same. These versions matched Watson's testimony about what happened to her. Watson's consistency among her accounts of what happened to her indicates considerable reliability for her account.

Additionally, Watson's description of Appellant's attacks matched her injuries. The sexual assault examination forensic report and the photographs of Watson showed injuries to her face, neck, one shoulder, arms, abdomen, vagina, and one leg. Appellant suggested to the jury that some of the injuries sustained by Watson would be consistent with consensual sex. While some minor injuries could occasionally be associated with consensual sex, the extent and type of injuries sustained by Watson do not favor a determination of consensual sex. Specifically, Watson described Appellant stabbing her with a writing pen repeatedly in the abdomen and on one arm. Injuries on her abdomen and arm match this description. No portion of the record offers any explanation for how or why being stabbed repeatedly with a writing pen should be considered indicative of consensual sex.

Finally, there is the description of Watson's behavior and personality before and after the incident. Watson testified that she is normally a quiet person, that it

was rare for her to go out to a club, and that she does not crave attention. Tutt gave the same description. Tutt testified that Watson did not want to go to the club but that she talked Watson into going. She testified that Watson is reserved, keeps to herself, and does not seek attention.

Watson testified that she has seen multiple medical health professionals to deal with what happened to her. She has been diagnosed with post-traumatic stress disorder, and her condition has had a negative impact on her work performance. Tutt testified that the incident significantly affected Watson and that Watson has not been the same since that date.

During closing argument, the State emphasized these facts to show that Watson was a credible witness. In contrast, it only tangentially referenced Investigator Moreno's testimony concerning when he had seen someone make up a rape allegation. Specifically, the prosecutor said, "This is not a woman who is having an affair on her husband. She's not married. There's no motivation to lie." The State did not make any other reference to the complained-of testimony.

Because of how little emphasis the complained-of testimony was given and because of the amount of other significant evidence supporting Watson's version of events and her credibility, we hold that the record does not support a determination that the complained-of testimony had a substantial and injurious effect or influence on the jury's verdict. *See Robinson*, 236 S.W.3d at 269

10

(holding error affects substantial right only when error had substantial and injurious effect or influence on jury's verdict). We overrule Appellant's three issues.

## Conclusion

We affirm the judgment of the trial court.

Laura Carter Higley
Justice

Panel consists of Justices Jennings, Higley, and Huddle.

Do not publish. TEX. R. APP. P. 47.2(b).

11